UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARINA AVRUTSKAYA,

                Plaintiff,

         - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-6267 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Marina Avrutskaya commenced this action under 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 15, 19.) For the reasons set forth below, the Court grants Plaintiff's motion and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

### I.    Procedural History

On November 21, 2014, Plaintiff filed an application with the SSA for DIB and SSI, in which she alleged she had been disabled as of April 16, 2014. (Administrative Transcript ("Tr."), Dkt. 13, at 12, 136, 262–69.) Her application was denied. (*Id*. at 149–56.) After requesting a hearing (*id.* at 157–58), Plaintiff appeared before Administrative Law Judge Dina R. Loewy ("the ALJ") on June 8, 2017 (*id.* at 81–120). In a decision dated November 1, 2017, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to DIB and SSI. (*Id.* at 9–25.) On August 30, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office

of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1–5.)  Thereafter, Plaintiff timely[1] filed the instant action.

## II.     The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the answer is yes, the claimant is not disabled.  If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the impairment is not severe, then the claimant is not disabled.  In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 16, 2014 and that Plaintiff

---

[1] Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on September 4, 2018.  Plaintiff filed the instant action on November 5, 2018—the first business day after the 60-day deadline, which fell on Saturday, November 3, 2018.  (*See generally* Complaint, Dkt. 1); Fed. R. Civ. P. 6(a)(1)(C).

suffered from the following severe impairments: "post[-]traumatic stress disorder [("PTSD")], major depressive disorder, anxiety disorder, and cervical spondylosis.[2]" (Tr. at 14.)

Having determined that Plaintiff satisfied her burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R § 404.1520(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. at 15.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform "light work" as defined in 20 C.F.R. § 404.1567(b).[4] (*Id.* at 17–23.) Qualifying her RFC determination, the ALJ noted that Plaintiff

---

[2] "Cervical spondylosis is a general term for age-related wear and tear affecting the spinal disks in [a person's] neck. As the disks dehydrate and shrink, signs of osteoarthritis develop, including bony projections along the edges of bones (bone spurs)." *Green v. Saul*, No. 18-CV-2857 (JGK) (KHP), 2019 WL 2996502, at *2 n.3 (S.D.N.Y. June 19, 2019) (internal quotation marks and citation omitted), *report and recommendation adopted sub nom. Green v. Berryhill*, 2019 WL 2992088 (S.D.N.Y. July 9, 2019).

[3] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[4] According to the applicable regulations,

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

can occasionally push and pull with the right upper extremity; she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, and crouch; she can never crawl; she can occasionally reach overhead with the right arm; she can frequently reach in all other directions; she need[s] to avoid concentrated exposure to extreme temperatures, wetness, humidity, irritants, and vibrations; she needs to avoid all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery; she is limited to unskilled work with no assembly line work; she is limited to low stress, defined as only occasional decision making and occasional changes in the work setting; and she can have no interaction with the public and only occasional interaction with coworkers or supervisors.

(*Id.* at 17–18.)

Relying on her RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as a home health attendant. (*Id.* at 23.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given her RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, *inter alia*: (1) office helper, which has an availability of 3,684 jobs; (2) shipping and receiving weigher, which has an availability of 1,760 jobs; and (3) photocopy machine operator, which has an availability of 17,182 jobs. (Tr. at 23–24.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, brackets, and citation omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ (1) failed to give controlling weight to her treating physicians, and (2) improperly relied on erroneous vocational testimony. (Plaintiff's Brief ("Pl.'s Br."), Dkt. 15-1, at 14–22.) The Commissioner counters that the ALJ (1) properly weighed the opinions of Plaintiff's treating physicians by finding that the other medical evidence in the record contradicted their opinions (Defendant's Brief ("Def.'s Br."), Dkt. 20, at 23–27), and (2) properly relied on the vocational expert's testimony (*id.* at 27–32).

## I. Treating Physicians' Opinions

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[5] *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation

---

[5] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on November 21, 2014, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c).

marks, brackets, and citations omitted). "Social Security regulations require that an ALJ give 'controlling weight' to the medical opinion of an applicant's treating physician so long as that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" *Pereira v. Astrue*, 279 F.R.D. 201, 206 (E.D.N.Y. 2010) (quoting 20 C.F.R. § 404.1527(d)(2)). "Medically acceptable clinical and laboratory diagnostic techniques include consideration of a 'patient's report of complaints, or history, [a]s an essential diagnostic tool.'" *Beck v. Colvin*, No. 13-CV-6014 (MAT), 2014 WL 1837611, at *9 (W.D.N.Y. May 8, 2014) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)). "The rationale for according well-supported treating physicians' opinions controlling weight is that they '[a]re likely to be [from] the medical professionals most able to provide a detailed [and] longitudinal picture of [the claimant's] medical impairment(s) . . . .'" *Id.* (quoting 20 C.F.R. § 416.927(d)(2)). Furthermore, as the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks, citations, and brackets omitted); *see also* 20 C.F.R. § 404.1527(c).

"In a case such as this, where the ALJ does not assign controlling weight to treating physician opinions, the ALJ must 'explicitly consider' the foregoing factors." *Maia v. Colvin*, No. 15-CV-584 (JGM), 2017 WL 715360, at *15 (D. Conn. Feb. 23, 2017) (quoting *Selian*, 708 F.3d

at 418). "Then, '[a]fter considering the above factors, the ALJ must 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129). Here, the ALJ refused to give controlling weight to the opinions of both of Plaintiff's treating physicians, Drs. Stephen Schwabish and Christina Vaglica. This was error.

## A.    Dr. Stephen Schwabish

Dr. Stephen Schwabish was Plaintiff's treating psychologist from May 2014 to August 2016.[6] (Tr. at 381, 657.) In fact, the record shows that Plaintiff met with Dr. Schwabish at least 43 times in that two-year period. (*See id.* at 381–85, 412–23, 547–656.) Though the ALJ noted that Plaintiff "has been treated by Dr. Stephen Schwabish," she did not expressly state the length or frequency of Plaintiff's treatment with Dr. Schwabish. (*See id.* at 20.) Instead, the ALJ focused largely on Dr. Schwabish's initial evaluation of Plaintiff, conducted in May 2014. (*Id.*; *see also id.* at 381–84.) Specifically, the ALJ noted that in

> a May 2014 consultation, [Plaintiff] was well-groomed, cooperative, and calm. Her affect was appropriate to the situation. Her mood was depressed and anxious. Her speech was normal but pressured. There was no evidence of a thought disorder in her presentation. She denied suicidal ideation or intent. She was fully orientated, demonstrated good general fund of information, and had good abstract reasoning ability. The remainder of the examination notes appear [to be] based solely on [Plaintiff's] subjective reports of nightmares, loss of interest, difficulty sleeping, irritability, depression, and anxiety.

(*Id.* at 20.) The ALJ also briefly described a February 2015 evaluation that "indicates that [Plaintiff] presented with symptoms of post traumatic stress disorder, severe anxiety, severe depression, and hopelessness," but dismissed that report because "[t]here is no indication of a mental status examination that assessed [Plaintiff's] functioning from an objective, clinical point of view." (*Id.*) Finally, the ALJ summarized two years' worth of treatment records by simply

---

[6] Beginning in September 2016, Plaintiff began seeing a new psychologist, Dr. Rachel Braga, closer to Plaintiff's new home in Brooklyn. (Tr. at 657–58.)

noting that they "indicate that [Plaintiff] has a flat affect and looks unhappy but is cordial and generally pleasant." (*Id.*) Based on her analysis of Dr. Schwabish's May 2014 and February 2015 evaluations as well as his treatment notes, the ALJ found that Dr. Schwabish's "conclusory opinions that [Plaintiff] is totally disabled" were entitled to "little weight." (*Id.*)

The ALJ's conclusion is erroneous for two reasons. First, the ALJ failed to explicitly consider the factors, described *supra,* for determining how much weight to afford to Dr. Schwabish's opinion. Instead, the ALJ focused on how Dr. Schwabish's opinion was internally inconsistent. This analysis is insufficient to support a determination that a treating doctor's opinion is entitled to less than controlling weight. *See Maia*, 2017 WL 715360, at *16 (finding remand appropriate when, *inter alia*, the *"*[treating physician] treated plaintiff on a monthly basis for nearly three years, yet there is no mention of either the duration or frequency of [the treating physician]'s treatment of plaintiff in the ALJ's decision"); *Hidalgo v. Colvin*, No. 12-CV-9009 (LTS) (SN), 2014 WL 2884018, at *20 (S.D.N.Y. June 25, 2014) (finding "inadequate" ALJ's conclusions about treating physician's opinion when "the ALJ [did] not mention the length of the treatment relationship between the physicians and [plaintiff], the nature and extent of the treatment relationship, the evidence in the record that supports [the treating physician]'s opinion, or whether [the treating physician] specializes in treatment of PTSD and depression"). Furthermore, as the Commissioner notes, while remand for explicit consideration of these factors is not always necessary (Defendant's Brief, Dkt. 20, at 24 (citing *Abreu v. Comm'r of Soc. Sec.*, No. 18-CV-5781 (BMC), 2019 WL 3244554, at *2 n.1 (E.D.N.Y. June 20, 2019)), remand is appropriate where, as here, "it is not clear from the decision that the proper analysis was undertaken," *Maia*, 2017 WL 715360, at *17.

Second, the ALJ also failed to provide good reasons for affording Dr. Schwabish's opinion little weight. The "'good reasons rule,' [] provides that the SSA 'will always give good reasons in [its] notice of determination or decision for the weight [it] gives [claimant's] treating source's opinion.'" *Beck*, 2014 WL 1837611, at *9 (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific." *Id.* (internal quotation marks, ellipsis, and citation omitted); *see also id.* (noting that the "good reasons rule exists to ensure that each denied claimant receives fair process") (internal quotation marks, alterations, and citation omitted). "In this instance the Court finds that while the ALJ did articulate reasons for not crediting the opinions of [Plaintiff]'s treating physicians, these were not 'good reasons' as is required." *Lumpkin v. Colvin*, No. 12-CV-1817 (DJS), 2014 WL 4065651, at *8 (D. Conn. Aug. 13, 2014) (citation omitted).

Here, it appears that the ALJ declined to give Dr. Schwabish's assessment controlling weight, as required by the treating physician rule, because of Dr. Schwabish's reliance on Plaintiff's subjective complaints. This is error. *See Green-Younger*, 335 F.3d at 107 ("The fact that [a treating physician] also relied on [a plaintiff]'s subjective complaints hardly undermines his opinion as to [a plaintiff's] functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool.") (internal quotation marks, alternations, and citation omitted); *see also Mahon v. Colvin*, No. 15-CV-398 (FPG), 2016 WL 3681466, at *4 (W.D.N.Y. July 6, 2016) (holding that "reliance on [a p]laintiff's subjective complaints is not a valid reason for rejecting [a consultative doctor]'s medical opinion").

Furthermore, though Dr. Schwabish's treatment records detail 43 sessions, the ALJ only referenced two of these sessions when noting that Plaintiff "has a flat affect and looks unhappy but is cordial and generally pleasant." (Tr. at 20 (citing *id.* at 568, 570).) The ALJ appears to rely

on this conclusory summary of Plaintiff's treatment records to support the ALJ's decision to give little weight to Dr. Schwabish's conclusion that Plaintiff is unable to work. However, "[r]easons that are conclusory fail the 'good reasons' requirement." *Lumpkin*, 2014 WL 4065651, at *8 (internal quotation marks and citation omitted). Moreover, this brief summary obscures the extent of Plaintiff's symptoms. For example, while Dr. Schwabish did note that "[Plaintiff] is cordial during sessions," he qualified that observation by noting that "she does not offer conversation and physically, looks unhappy." (Tr. at 568.) Dr. Schwabish's notes for that same session also stated that "[Plaintiff] continues to be very depressed post traumatic event; she evidences several significant PTSD symptoms and has not been able to find relief via any techniques." (*Id.*) His notes from the other session specifically cited to by the ALJ also noted that Plaintiff "continues to strongly evidence symptoms of PTSD" and that the "deleterious impact of not trying to at least slightly engage in some preferred activities was emphasized." (*Id.* at 570.) Finally, in the session between the two dates emphasized by the ALJ, Dr. Schwabish noted that Plaintiff had a dysphoric mood and "has not been able to implement any suggestions towards personal involvement including activities she used to enjoy." (*Id.* at 569.) He also noted that he reached the same conclusion as Dr. Vaglica that Plaintiff was totally disabled "based on exacerbated symptoms and [Plaintiff's] inability to implement psychological intervention strategies." (*Id.*)

"The ALJ cannot cherry pick the medical source opinions and the treatment records to support [her] RFC determination." *Maia*, 2017 WL 715360, at *18; *see also Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y 2004) ("It is grounds for remand for the ALJ to ignore parts of the record that are probative of the claimant's disability claim.") (collecting cases). Therefore, the Court finds that, here, the ALJ failed to adequately consider the necessary factors

or provide good reasons for failing to afford controlling weight to Dr. Schwabish's opinion that Plaintiff was totally disabled.

### B.    Dr. Christina Vaglica

The ALJ's decision to give "little weight" (Tr. at 19) to the opinion of Dr. Vaglica, Plaintiff's treating psychiatrist of three years (*id.* at 517, 523 (noting that Dr. Vaglica was Plaintiff's treating psychiatrist); *id.* at 528, 660–715, 718 (showing that Dr. Vaglica had treated Plaintiff on a monthly basis from April 2014 to May 2017)), is equally troubling. First, though the record indicates that Dr. Vaglica was Plaintiff's treating psychiatrist, the ALJ obscured this fact by describing Dr. Vaglica merely as someone who had "conducted worker's compensation evaluations of [Plaintiff] since June 2014." (*Id.* at 18.) *Cf. Reyes v. Colvin*, No. 13-CV-4683 (WHP), 2015 WL 337483, at *17 (S.D.N.Y. Jan. 26, 2015) ("A treating source means the claimant's own physician who provides the claimant, or has provided the claimant, with medical treatment or evaluation and who has, or has had, an *ongoing treatment relationship* with the claimant.") (emphasis in original) (citations omitted). The fact that Dr. Vaglica had evaluated Plaintiff for purposes of her worker's compensation claims is not a legitimate basis for discounting the doctor's opinions or negating her status as Plaintiff's treating physician. *See Mercado v. Colvin*, No. 15-CV-2283 (JCF), 2016 WL 3866587, at *15 (S.D.N.Y. July 13, 2016) (finding that an ALJ disregarding an "opinion regarding the claimant's disability status [because it] was made for the purposes of workers' compensation . . . is a legally insufficient reason to categorically disregard a treating physician's opinion") (internal record citations omitted).

Moreover, as with Dr. Schwabish, the ALJ failed to explicitly consider the necessary factors when determining what weight to give to Dr. Vaglica's opinion. At most, the ALJ alluded to the length of Plaintiff's treatment with Dr. Vaglica (*see* Tr. at 19 (noting that "[e]xamination

findings from Dr. Vaglica remained consistent through September 2016")), but failed to mention that Plaintiff, in fact, met with Dr. Vaglica on a monthly basis for over three years. This brief, non-substantive reference to Plaintiff's treatment history with Dr. Vaglica does not satisfy the ALJ's duty to conduct the proper analysis required to discount a treating physician's opinion. *See Maia*, 2017 WL 715360, at *16; *Hidalgo*, 2014 WL 2884018, at *20.

Instead, the ALJ once again focused on the purported inconsistencies between Dr. Vaglica's opinion and the underlying record. For example, after describing Dr. Vaglica's initial June 13, 2014 examination of Plaintiff and noting that Dr. Vaglica's findings remained consistent through September 2016, the ALJ concluded that those findings were "moderate" and therefore were inconsistent with several other aspects of Dr. Vaglica's treatment records, such as giving Plaintiff "a GAF[7] score of 40" because such a score "appears to be very low given the moderate exam findings." (Tr. at 19.) The ALJ also found Dr. Vaglica's "several additional written opinions that the claimant is unable to work" to be "inconsistent with [Dr. Vaglica's] moderate findings." (*Id.*) However, Dr. Vaglica's 2014 opinion did not describe Plaintiff's symptoms as moderate. (*Cf.* Tr. at 660–61.) Moreover, SSA regulations note that someone who has "chronic organic, psychotic, and affective disorders, [] may commonly have [their] life structured in such a way as to minimize [their] stress and reduce [their] symptoms and signs. In such a case, [they] may be much more impaired for work than [their] symptoms and signs would indicate." *Hidalgo*, 2014

---

[7] "GAF rates overall psychological functioning on a scale of 0–100 that takes into account psychological, social, and occupational functioning." *Zabala v. Astrue*, 595 F.3d 402, 405 n.1 (2d Cir. 2010) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV")* 34 (4th ed. rev. 2000)). "A GAF score from 31 to 40 represents "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgement, thinking, or mood (e.g., depressed man avoids friends, neglect[s] family, and is unable to work . . .)." *Hidalgo*, 2014 WL 2884018, at *8 n.1 (internal quotation marks and citation omitted).

WL 2884018, at *16 (citation omitted). As a result, "claims concerning mental disorders require a robust examination that is sensitive to the dynamism of mental illnesses and the coping mechanisms that claimants develop to manage them." *Id.* However, "an ALJ is not a doctor, and therefore is not equipped to make [such] medical judgments." *Indelicato v. Colvin*, No. 13-CV-4553 (JG), 2014 WL 674395, at *3 (E.D.N.Y. Feb. 21, 2014). Therefore, to the extent the "moderate" descriptor used by the ALJ is her own assessment of Plaintiff's condition, it amounts to an improper medical conclusion. *See Portalatin v. Comm'r of Soc. Sec.*, No. 18-CV-920 (PKC), 2019 WL 4674785, at *6 (E.D.N.Y. Sept. 25, 2019) (finding that "[i]t was not within the ALJ's purview to determine that [p]laintiff's ability to travel to his treatment sessions and/or engage in other 'living activities' somehow negated [the treating physician]'s evaluation of [p]laintiff's medical impairments"); *Brown v. Apfel*, 991 F. Supp. 166, 171–72 (W.D.N.Y. 1998) (discussing ALJ's erroneous discrediting of treating physician's opinion based on ALJ's incorrect interpretations of physician's treatment notes, to illustrate why an "ALJ is not free to substitute his own lay opinion for opinions from treating sources"); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.").

Finally, the ALJ also appears to have selectively focused on aspects of the record that are most favorable to her determination. This is, of course, error. *See, e.g.*, *Stewart v. Colvin*, No. 15-CV-2427 (MKB), 2016 WL 5349768, at *17 (E.D.N.Y. Sept. 23, 2016) ("[T]he ALJ cannot simply pick and choose from the transcript only such evidence that supports [her] determination, without affording consideration to evidence supporting the plaintiff's claims.") (internal quotation marks and citations omitted). This selective approach is evident in the ALJ's discussion of Plaintiff's ability to use public transportation. The ALJ highlighted that Dr. Vaglica noted that Plaintiff

"cannot take public transportation due to her level of anxiety" (Tr. at 19; *see also id.* at 523), and contrasted it with an April 2015 consultative evaluation where Plaintiff stated that she does use public transportation and a June 2015 Cooperative Disability Investigations Unit report where Plaintiff was "observed getting on a train by herself with no apparent difficulty," (*id.* at 19; *see also id.* at 474–76, 478–84). Based on this comparison, the ALJ concluded that Dr. Vaglica's opinion was entitled to "little weight." (*Id.* at 19.)

However, the record evidence suggests a more nuanced picture as to Plaintiff's ability to use public transportation, which the ALJ seemingly ignored in order to support her decision to afford Dr. Vaglica's opinion little weight. For example, both of the instances of Plaintiff using public transportation cited by the ALJ occurred in the first half of 2015, around the same time that Dr. Schwabish noted that Plaintiff was making some improvement, which was followed by a period when Plaintiff's symptoms worsened and when Dr. Vaglica opined that Plaintiff was unable to take public transportation due to her anxiety. (*Compare id.* at 625 (noting, on July 4, 2015, that Plaintiff "for the first time in many months showed some improvement; she indicated that she had been able to sit in [her] backyard, reading for brief periods"), *with id.* at 626 (noting that Plaintiff "regressed since last seen as she could [n]o longer sit out in backyard and read"); *see also id.* at 687 (noting "increase in anxiety and panic attacks due to the fact that [Plaintiff's] nightmares related to the [April 2014 attack] have increased in frequency").) Furthermore, the record evidence more consistently points to the fact that Plaintiff's inability to use public transportation largely stems from being "fearful of taking public transportation and continues with fear of her former client harassing her," such that she instead "[a]sks others for rides." (*See, e.g.*, *id.* at 684; *see also id.* at 475 (noting, in April 2015 consultative exam, that Plaintiff "takes public transportation" but that "[s]he also states that she is homebound 24/7").) Notably, at the hearing, the ALJ merely

asked whether Plaintiff uses public transportation and when Plaintiff simply answered, "No," the ALJ did not follow up on the discrepancies that the ALJ later relied upon in her decision. (*Id.* at 89.) *Cf. Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016) (noting that the ALJ's duty to develop the record "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity"); *cf. also Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) ("The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'") (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)).

Similarly, in noting that Dr. Vaglica's opinion that Plaintiff is unable to work is inconsistent with the doctor's "frequent statements that [Plaintiff] has a fair prognosis with treatment," the ALJ relied on a November 2014 evaluation. (Tr. at 19 (citing *id.* at 673); *see also id.* at 715 (noting that, as of November 2015, Dr. Vaglica still notes that Plaintiff's prognosis is fair with treatment).) The ALJ did not address whether or how this "fair prognosis" was specifically relevant to whether Plaintiff would be able to return to work. Furthermore, the ALJ completely ignored the fact that Dr. Vaglica opined in May 2017, two years after the last notation in the record that Plaintiff had a fair prognosis, that "[d]espite consistent medication management with multiple antidepressants and despite consistent weekly psychotherapy, [Plaintiff] has not made any emotional progress," and that as a result she "is totally permanently psychiatrically disabled," because "she is unable to work in any setting due to her PTSD symptoms." (Tr. at 718.) As previously noted, "[i]t is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports [her] determination." *Beckers v. Colvin*, 38 F. Supp. 3d 362, 374–75 (W.D.N.Y. 2014). The ALJ's focus on purported inconsistencies and selective use of the

record does not provide a "good reason" for not affording Dr. Vaglica's opinion controlling weight.

Therefore, the Court finds that the ALJ also failed to adequately consider the necessary factors or provide good reasons for failing to afford controlling weight to Dr. Vaglica.

\*       \*       \*

Given that the ALJ erred as to the weight she afforded both of Plaintiff's treating physicians, the Court finds that remand is warranted to address that error. *See Briscoe v. Astrue*, 892 F. Supp. 2d 567, 581 (S.D.N.Y. 2012) ("Because the '[f]ailure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand,' this case must be remanded for that purpose.")

## II.     Duty to Develop the Record

"The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." *Rodriguez v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at \*3 (E.D.N.Y. Nov. 7, 2003) (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)). Before the Court can determine whether an ALJ's decision is supported by substantial evidence, "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM), 2010 WL 2736879, at \*12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "The duty to develop the record is particularly important where an applicant alleges [she] is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." *Craig*, 218 F. Supp. 3d at 268 (internal quotation marks and citations omitted). "Even when a claimant is represented by counsel, it is the well-established rule in our

circuit that the social security ALJ, unlike the judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks, ellipsis, and citation omitted). "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

Where, as here, the ALJ identified several inconsistencies and deficiencies in the treating physicians' opinions, the ALJ was obligated to "seek clarification and additional information from [these doctors] to fill any clear gaps before dismissing the doctor's opinion." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269–70 (S.D.N.Y. 2010) (internal quotation marks, citation, and brackets omitted). This is especially true when the severe impairments at issue are psychiatric. *Hidalgo*, 2014 WL 2884018, at *4 (stressing importance of clarifying mental health record because of "the difficulty in determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace") (internal quotation marks and citations omitted). For example, rather than dismiss Dr. Schwabish's conclusion that Plaintiff is unable to work by describing it as "conclusory" (Tr. at 20), the ALJ was obligated to attempt to seek more information from Dr. Schwabish as to Plaintiff's abilities to perform the specific mental requirements of work. *See Pabon v. Barnhart*, 273 F. Supp. 2d 506, 516 (S.D.N.Y. 2003) (remanding for further development of the record when treating physician noted that plaintiff had "limited to fair ability to understand, carry out and remember instructions in a work setting[,]" but "did not express any opinion as to [plaintiff]'s ability to perform the other mental requirements of work, such as responding appropriately to supervision and work pressures") (internal record citations omitted).

Likewise, in considering Dr. Vaglica's opinion, the ALJ noted several deficiencies, such as Dr. Vaglica stating in a February 2015 report that Plaintiff "has a poor ability to perform

activities of daily living, but . . . not provid[ing] the basis for this opinion." (Tr. at 19.) The ALJ found that while Dr. Vaglica opined that Plaintiff was "limited in sustained concentration and persistence, social interaction, and adaptation," Dr. Vaglica did not "indicate the degree of limitation or provide a basis for this opinion." (*Id.*) The ALJ also noted several inconsistencies within Dr. Vaglica's medical records, such as the fact that Dr. Vaglica "indicated that [Plaintiff] has poor concentration, although the exam notes indicated good immediate recall" and that, in July 2016, Plaintiff had "marked limitations in activities of daily living, maintaining social functioning, and concentration, persistence, or pace," but that this opinion was "likewise not supported by the exam notes[,] which indicate moderate findings as well as coherent and goal directed speech, intact insight and judgment, good immediate recall, and intact abstraction and proverb understanding." (*Id.*) However, these gaps and inconsistencies, rather than providing a basis for affording minimal weight to the opinions of Plaintiff's treating doctors, means instead that the ALJ must "affirmatively seek out clarifying information from the doctor[s]" before discrediting their opinions, *Duncan v. Astrue*, No. 09-CV-4462 (KAM), 2011 WL 1748549, at * 19 (E.D.N.Y. May 6, 2011), because "[s]uch gaps reflect deficiencies in the record, not necessarily lack of credibility on the part of the plaintiff or [her] treating physician[s]," *Hidalgo*, 2014 WL 2884018, at *19.

The Court therefore concludes that remand is required to enable the ALJ to solicit the necessary information from Drs. Schwabish and Vaglica to address the perceived deficiencies in their medical reports. As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from [her] medical sources" and "must seek additional evidence or clarification when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory

diagnostic techniques." *Calzada*, 753 F. Supp. 2d at 269 (internal quotation marks, citation, and brackets omitted).

*   *   *

In sum, the Court finds that remand is necessary to enable the ALJ to obtain enough information to determine whether the opinions of Drs. Schwabish and Vaglica—Plaintiff's treating physicians—are entitled to controlling weight.[8] *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("[W]here we are unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ, we will not hesitate to remand for further findings or a clearer explanation for the decision.") (internal quotation marks and citation omitted).  Although the medical opinions of Drs. Schwabish and Vaglica are not themselves "determinative," their opinions are entitled to "controlling weight," so long as the ALJ had enough information to determine that they were "well supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence."  *Green-Younger*, 335 F.3d at 106; *see also Moran*, 569 F.3d at 112 (reiterating "well-established rule in our circuit that the social security ALJ, unlike the judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding") (internal quotation marks, ellipsis, and citation omitted).

---

[8] Plaintiff also argues that the ALJ erred by relying on the vocational expert's testimony. (Pl.'s Br., Dkt. 15-1, at 20–22.)  However, "[t]he Court is not in a position to evaluate this argument" since "this case [must] be remanded because of an incorrect application of the treating physician rule and for further development of the record."  *Hidalgo*, 2014 WL 2884018, at *21. "Once the perceived inconsistencies in the record have been cleared and the relative weights of the [medical] opinions . . . are clarified, any hypothetical posed to the vocational expert must be adjusted to match the evidence in the record."  *Id.*

If, after soliciting the necessary information on remand, the ALJ determines that the opinions of Drs. Schwabish and Vaglica are still entitled to little weight, she must adduce evidence from a medical professional to support that conclusion. *See Greek*, 802 F.3d at 375. In doing so, the ALJ should keep in mind that she "may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Mayor v. Colvin*, No. 15-CV-344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015) (citations omitted); *see also Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (noting that the ALJ is free to give greater weight to consultative medical examiners' opinions so long as he documents his rationale for finding the relevant standards met).

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's cross-motion for judgment on the pleadings and grants Plaintiff's motion. The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
        Brooklyn, New York